UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                               :        Chapter 11

SOLANGE D. CHADDA                                   :

    Debtor                                          :        Bankruptcy No. 07-12665bif

.................................................

MEMORANDUM

.................................................

    Two matters are presently before me in this chapter 11 case. First, the debtor seeks confirmation of an amended reorganization plan. Confirmation, however, is opposed by creditors Certified Mortgage Investors, LLC, Security Union Title Insurance Company, and Chicago Title Insurance Company. Confirmation is also opposed by the United States trustee. As will be discussed, the objectors maintain, <u>inter</u> <u>alia</u>, that the proposed plan is infeasible and speculative, as well as unfair and inequitable. The debtor argues to the contrary.

    In addition, Certified Mortgage has filed a motion to dismiss this case, contending that the debtor has had sufficient opportunity to propose a viable reorganization plan and has been unable to do so. Dismissal under section 1112 is supported by the other creditors who objected to confirmation, as well as by the United States trustee.

    An evidentiary hearing was held and the following facts were proven.[1]

---

[1] The debtor improperly attempted to supplement the record by attaching documents to her post-hearing reply memorandum. Those documents cannot be considered, as the objecting creditors and United States trustee had no opportunity to challenge their authenticity or admissibility, cross-examine witnesses regarding those documents, or offer rebuttal evidence. See, e.g., In re Millman, 2003 WL 716289, at *3 n.12 (Bankr. E.D. Pa. 2003);

(continued...)

Those facts will be detailed in narrative form.

I.

On May 7, 2007, the debtor filed a voluntary bankruptcy petition under chapter 11, captioned above. This is her second effort at a bankruptcy reorganization in this district. See Bankr. No. 01-17570, and her third bankruptcy filing.[2] Her first Pennsylvania bankruptcy case was dismissed for failure to tender plan payments, and an order had been entered precluding her from filing any further bankruptcy cases without obtaining prior court approval.[3] See generally In re Casse, 198 F.3d 327 (2d Cir. 1999).

By order dated May 7, 2007, I granted her approval for a second Pennsylvania reorganization attempt based upon her testimony that she was making progress toward refinancing or selling her real property, but directed, for reasons explained in open court, that she obtain confirmation within 75 days. Cf. 11 U.S.C. § 1122(e) (fixing deadlines for chapter 11 plan submissions in small business cases); 11

---

[1](...continued)
In re MacDonald, 222 B.R. 69, 72 (Bankr. E.D. Pa. 1998); In re Midway Airlines, Inc., 221 B.R. 411, 462-63 (Bankr. N.D. Ill. 1998); Matter of Holly's, Inc., 190 B.R. 297, 301 (Bankr. W.D. Mich. 1995).

[2]The debtor also filed a bankruptcy case in the Central District of California docketed at 02-25414. See Debtor's Voluntary Petition (Form B1, Attachment).

[3]Bankr. No. 01-17570, docket entry # 60, dated May 22, 2002. The debtor's petition in this bankruptcy case reveals that she commenced her California bankruptcy case on May 28, 2002. Thus, it would appear that the California bankruptcy case was filed in violation of this court's bar order.

U.S.C. § 1129(e) (directing that confirmation hearings be held, unless extended, within 45 days of filing a plan in small business cases).

As with her previous bankruptcy cases, Ms. Chadda's present bankruptcy filing was designed to prevent the foreclosure of real estate located at 507 North Highland Avenue, Los Angeles, California.[4] Ms. Chadda has title to that realty, but has lived in Philadelphia since 1994. She values that realty at $1.5 million (and claims that it was appraised at $1.425 million).[5]

In order to prevent foreclosure of the California real estate, the debtor previously refinanced the property, and Certified Mortgage currently holds the first mortgage. That mortgage contained a balloon payment provision and became due on December 31, 2005, well prior to the debtor's latest bankruptcy filing. This mortgagee

---

[4]Although the debtor suggested in her motion seeking permission to file another bankruptcy petition that she was considering selling this realty, and although selling the property appears logical, there was no evidence that she made any efforts to do so during the present bankruptcy case.

[5]Her bankruptcy Schedule A listed the value of this realty at $2 million, plus asserted that it has "oil rights" worth $5 million. There was no evidence offered concerning this higher valuation, nor of any oil rights. For purposes of confirmation and dismissal, I have used the value mentioned in the text above.

In her disclosure statement and amended Schedule B (which amendment was filed after the confirmation hearing), the debtor asserts that she owns antiques and jewelry worth more than $350,000, stock in "Solange, Inc." worth $1 million, plus bottles of perfume, bath gel and sunglasses branded with the name "Solange N9" worth collectively more than $400,000. According to her amended disclosure statement, many years ago the debtor manufactured "her own label 'Solange'" for various retailers. Amended Disclosure Statement, at 9. Apparently, she has retained unsold inventory for many years.

To the extent any evidence was offered about such personal property, I find the debtor's valuations not credible. Indeed, were those valuations truly accurate the debtor's need for bankruptcy reorganization would be unclear. As her Reply Memorandum at 6 intimates, she could simply sell some of her property and repay her creditors.

3

has filed a secured proof of claim in the amount of $1,043,697.20.[6] Security Union filed a secured proof of claim, asserting a judgment lien in the approximate amount of $87,000.[7] Chicago Title filed an unsecured proof of claim in the approximate amount of $11,000. Other unsecured claims aggregate about $38,000. There are also priority tax claims submitted by the Commonwealth of Pennsylvania and the Internal Revenue Service totaling almost $75,000, plus a tax lien asserted by Los Angeles County for $24,040.27, and a judgment lien held by the University of Pennsylvania Small Animal Hospital for $3,777.56.[8]

      The debtor's amended Schedule I reports income earned by her of $2,000 per month for translation services, and $2,000 per month as an employee of Blue Sky Resort and Spa, Inc. In addition, the debtor offered in evidence copies of two one-year leases for a portion of her California property totaling $3,000. Ex. D-6.

      The debtor's proposed amended chapter 11 plan provides as follows (according to classification of the claims):

      First, all priority claims, other than tax priority claims, will be paid in full on the effective date of the plan. The effective date is identified as 30 days from a final, non-appealable order. The debtor estimates that such claims will be about $25,000. Amended Disclosure Statement, at 11.

---

[6] I take judicial notice of the claims docket in this case. See generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995).

[7] The debtor's amended disclosure statement, at 12, asserts that she paid a portion of this claim and will file an objection on that basis; no objection has yet been filed.

[8] This judgment is purportedly on appeal in the state court system. Amended Disclosure Statement, at 12.

Second, Certified Mortgage will receive on account of its secured claim $825,000 from the proceeds of a refinancing loan, plus monthly payments of $2,500 for ten years.[9] The unpaid portion of the secured claim is to be subordinated to the refinancing lien.

Third, the property tax claim held by Los Angeles County will be repaid in full within 90 days after confirmation from the refinancing proceeds.

Fourth, the judgment claims of Security Union and the University of Pennsylvania will be paid 75% within 90 days from confirmation.

Fifth, secured and priority tax claims will be repaid over five years, with statutory interest, beginning 90 days after confirmation.

Finally, allowed unsecured claims will receive a 75% dividend, 90 days from confirmation.[10]

The debtor's report of plan voting, Ex. D-2, reflects that impaired classes 2 (Certified Mortgage), 4 (Security Union and the University of Pennsylvania), 5 (tax claimants) and 6 (unsecured creditors) all rejected the plan pursuant to 11 U.S.C. § 1126(c). The only class voting in favor of the plan was class 3 (Los Angeles County).

The evidence regarding plan funding consisted of the debtor's testimony, with virtually no corroborative documents. The debtor testified that she applied for a refinancing loan and was orally approved to borrow $900,000, with the California realty

---

[9] The monthly payments are computed by fixing the remaining amount of the claim at $215,000, to be repaid at 7.03% interest.

[10] The debtor testified that she was now willing to pay all allowed unsecured claims in full. The plan was not so modified. Nor did she explain the timing of such additional payments to creditors.

5

serving as collateral and the lender holding a first lien position. However, she offered no written evidence of her loan application, loan commitment, or loan repayment terms.[11] She also testified that she would fund the plan by establishing a gourmet, low carbohydrate lunch-truck operation in Los Angeles, see Ex. D-8 (pages 2-3[12]), by selling wine under her own label, and by renting the balance of her Los Angeles property (on a bedroom by bedroom basis). She further testified that she receives about $10,000 each month (7,000 euros) from relatives in France. See also Schedule I (filed on May 9, 2007).

None of the above-mentioned businesses were operational as of the time of the confirmation hearing; indeed, the debtor had not obtained all necessary licenses for her lunch-truck business. Start up financing for these business ventures would purportedly be provided by her French relatives, but no start-up capital was in place. She offered no contracts, had no employees, and owned no equipment related to these businesses.

Finally, the debtor has little money saved, despite her purported receipt of monthly assistance from relatives. She testified that in 2007 she spent considerable sums on repairs to her Los Angeles property, but provided no receipts or corroboration at the confirmation hearing, or as attachments to her monthly operating statements submitted to

---

[11]Although the letter was inadmissible hearsay, Ex. D-3, the debtor testified to correspondence from Trojan Home Loans, without objection. This correspondence did not commit to financing, nor mention repayment terms or interest rate. It also mentioned the need for further property appraisal. The debtor believes that, if a loan were approved, her interest rate would be 9%, with $8,000 monthly payments and a six-year balloon.

[12]The objection to Ex. D-8, page 1, was sustained as hearsay.

the United State trustee.[13]  See generally Fed. R. Bankr. P. 2015(a) [Interim].[14]  Moreover, some of the filed proofs of claims are for small amounts (e.g., claims ##3, 6), suggesting (along with her unpaid tax obligations) that the debtor has had limited funds with which to pay her creditors.[15]

II.

Confirmation of a chapter 11 plan requires that the plan proponent meet all the requirements of section 1129(a), see, e.g., In re Dupell 2000 WL 192972, at *3 (Bankr. E.D. Pa. 2000); In re Future Energy Corp., 83 B.R. 470, 481 (Bankr. S.D. Ohio 1988), except that of 1129(a)(8) (requiring every impaired class of claims or interests to accept the plan).  If all the provisions of section 1129(a) are established, save that of

---

[13]The objectors requested and the debtor agreed that I may take judicial notice of the filed operating reports.  One report lists a $7,000 garage door repair, but attaches no invoice or receipt.

[14]In light of the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, and until official procedural rules are adopted under the Rules Enabling Act, the Judicial Conference has recommended the adoption of "Interim" procedural rules.  See In re Kibbe, 361 B.R. 302 (B.A.P. 1st Cir. 2007).  This district has accepted that recommendation.

[15]Indeed, the debtor's original bankruptcy Schedule J filed in May 2007 disclosed only $1,100 of monthly expenses in addition to a purported $9,500 monthly expense for mortgage payments.  As Ms. Chadda's mortgage matured in 2005, she has had no such expense.  Thus, her inability to pay her non-mortgage debts as they came due, and her lack of savings, undermines her testimony that she receives roughly $10,000 per month in payments from French relatives.
   Perhaps sensing this credibility issue, on August 16, 2007, she filed an amended schedule of expenses.  On this amendment she lists an "improvement to real estate" expense of $900 per month, a "miscellaneous" utility expense of $1,000 per month, and a monthly travel expense of $5,000.  There was no evidence offered to explain or corroborate those expense items.

7

section 1129(a)(8), then the plan proponent can seek confirmation under section 1129(b). See 7 Collier on Bankruptcy, ¶ 1129.03[8], at 1129-58 (15th ed. rev. 2007) ("The condition set forth in section 1129(a)(8) is the only condition precedent which is not absolutely necessary for confirmation. If a plan satisfies the confirmation criteria set forth in section 1129(a), including the requirement that if a class of claims is impaired, at least one impaired class of claims accepts the plan, the plan may be confirmed notwithstanding the opposition of one or more impaired classes of claims or interests, provided the plan satisfies section 1129(b).").

Here, the debtor concedes that not every impaired class of creditors accepted her proposed amended chapter 11 plan. (Indeed, only one impaired class supported her plan.) Thus, she seeks confirmation under section 1129(b)—the fair and equitable provision. Although the plan objectors challenge that the requirements of section 1129(b) were established, they also contend vigorously, inter alia, that section 1129(a)(11), the feasibility provision, has not been proven. Unless a proposed chapter 11 plan is feasible, a court need not consider the other objections to confirmation. See, e.g., In re Dupell 2000 WL 192972, at *6.

Section 1129(a)(11) provides:

(a) The court shall confirm a plan only if all of the following requirements are met:
                              ***
11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

Thus, to be confirmed, every chapter 11 plan must be "feasible" by virtue of section 1129(a)(11).

8

> Section 1129(a)(11) codifies the feasibility requirement and requires that confirmation of the plan is not likely to be followed by liquidation or the need for further financial reorganization, unless such liquidation or reorganization is proposed in the plan. 11 U.S.C. § 1129(a)(11). To allow confirmation, the bankruptcy court must make a specific finding that the plan as proposed is feasible. . . . The standard of proof required by the debtor to prove a Chapter 11 plan's feasibility is by a preponderance of the evidence . . . and we review the bankruptcy court's finding that a debtor's plan is feasible under the clearly erroneous standard. . . .
>
> In determining whether a debtor's Chapter 11 plan of reorganization is feasible, we noted in <u>Briscoe</u> that "the [bankruptcy] court need not require a guarantee of success . . . [o]nly a reasonable assurance of commercial viability is required." <u>Id.</u> at 1165-66. . . . All the bankruptcy court must find is that the plan offer "a reasonable probability of success." <u>In re Landing Assoc., Ltd.</u>, 157 B.R. 791, 820 (Bankr. W.D. Tex. 1993).

<u>Matter of T-H New Orleans Ltd. Partnership</u>, 116 F.3d 790, 801 (5th Cir. 1997) (citations omitted).

> More recently, the Eighth Circuit Court of Appeals explained:
>
> While a reorganization plan's "[s]uccess need not be guaranteed," <u>In re Monnier Brothers</u>, 755 F.2d at 1341, the bankruptcy court cannot approve a plan unless it has at least a reasonable prospect for success. <u>See id.</u> . . . . The debtors bear the burden of establishing the feasibility of their plans by a preponderance of the evidence.

<u>In re Danny Thomas Properties II Ltd. Partnership</u>, 241 F.3d 959, 963 (8th Cir. 2001).

Accordingly, the purpose of the chapter 11 feasibility requirement is to prevent confirmation of "visionary schemes." <u>Matter of Pizza of Hawaii, Inc.</u>, 761 F.2d 1374, 1382 (9th Cir. 1985); <u>see</u>, <u>e.g.</u>, <u>In re Pikes Peak Water Co.</u>, 779 F.2d 1456, 1460 (10th Cir. 1985); <u>In re Monnier Bros.</u>, 755 F.2d 1336, 1341 (8th Cir. 1985) ("'In determining whether [a plan] is feasible, the bankruptcy court has an obligation to

9

scrutinize the plan carefully to determine whether it offers a reasonable prospect of success and is workable.'") (quoting United Properties, Inc. v. Emporium Department Stores, Inc., 379 F.2d 55, 64 (8th Cir.1967)); 7 Collier on Bankruptcy, ¶ 1129.03[11] (15th ed. rev. 2007).

Therefore, in this chapter 11 case, Ms. Chadda had the burden to demonstrate at her confirmation hearing that there is a reasonable likelihood that she can fulfill the promises made by her proposed plan. Her sincerity and belief in her own ability to do so are insufficient to meet this burden:

> Feasibility, as noted in the case of In re Bergman . . . contemplates "the probability of actual performance of the provisions of the plan. Sincerity, honesty and willingness are not sufficient to make the plan feasible, and neither are visionary promises. The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts."

In re Hoffman, 52 B.R. 212, 215 (Bankr. D.N.D. 1985) (quoting In re Bergman, 585 F.2d 1171 (2d Cir. 1978)); see also In re Walker, 165 B.R. at 1004.

Here, the debtor's proposed amended plan is expressly dependent upon her obtaining a refinancing loan using her Los Angeles property as collateral. Although not expressly stated in her plan, her testimony and amended disclosure statement also noted that plan funding—after distribution of $900,000 refinancing proceeds to the mortgagee ($825,000), to repay her delinquent real estate taxes ($25,000), payment of administrative expenses ($25,000), viz. her bankruptcy attorney fees and payment of closing fees ($25,000)—would be obtained from the successful operation of one or more new business entities, plus the leasing of her realty.

Based upon the evidence presented, or lack thereof, Ms. Chadda has not met her evidentiary burden.

First, as all of the creditor objectors (and the United States trustee) observe, the evidence is too speculative to accept that the debtor will obtain mortgage loan refinancing. She offered no evidence of a loan commitment. Instead, at best, the debtor appears to have applied for a loan—though there also was no evidence that she paid any application fees—with the application under consideration.

There was also no evidence of the information she supplied with her loan application regarding present income and her ability to repay any loan; nor was there evidence of her disclosure of multiple bankruptcy filings. Moreover, as the debtor acknowledges, Debtors' Post-Hearing Memorandum, at 8, this is a period when mortgage financing can be difficult to obtain, especially without income corroboration (of which the debtor has little). Therefore, without evidence of an actual loan commitment (and a commitment that promises a prompt loan closing, given the plan effective date), I must conclude that her expectation of refinancing is speculative. See, e.g., In re Repurchase Corp., 332 B.R. 336, 343 (Bankr. N.D. Ill. 2005) ("Allowing Debtor's confirmation to be based on a 'hope against hope that the financing [would] actually materialize' post-confirmation without some form of corroboration would go against a bankruptcy judge's duties of ensuring that the Plan complies with the provisions of the Bankruptcy Code."); In re Ralph C. Tyler, P.E., P.S., Inc., 156 B.R. 995, 997 (Bankr. N.D. Ohio 1993) ("Without evidence of a firm commitment of financing, this Plan does not meet the feasibility requirement."); In re Stratford Associates Ltd. Partnership, 145 B.R. 689, 699 (Bankr. D. Kan. 1992) ("Generally, without proper funding in place or a firm

commitment of such funding, the Court cannot find the plan feasible."); In re Haardt, 65 B.R. 697, 702 (Bankr. E.D. Pa. 1986) (lack of refinancing commitment rendered plan infeasible); see also In re Made in Detroit, Inc., 299 B.R. 170, 176-77 (Bankr. E.D. Mich. 2003) (refinancing too speculative for confirmation); In re Kovalchick, 1995 WL 118171, at *9 (Bankr. E.D. Pa. 1995) (same). Compare In re Global Ocean Carriers Ltd., 251 B.R. 31, 46 (Bankr. D. Del. 2000) (refinancing is feasible under section 1129(a)(11) where lenders "have issued a commitment letter and/or agreed to term sheets which are detailed and contingent only upon final documentation, confirmation of the Modified Plan, and no materially adverse changes occurring.").

The debtor faces a similar problem regarding her anticipated increases in income sources from new business ventures. She plans on establishing, post-confirmation, two business operations, both of which can be considered, at most, in their planning stages. No needed licenses, employees, start-up capital, equipment, business structure, or marketing efforts are in place. Neither business has any historical profit. The debtor's projected income for her lunch truck business, Ex. D-8 (pages 2-3), was prepared by her and appeared to be no more than speculation without foundation.

The debtor's contention in support of confirmation, in essence, is to accept that she will be a successful entrepreneur who will create new businesses and will repay creditors, because years ago she was such an entrepreneur. See Debtor's Reply Memorandum, at 5. Her burden under section 1129(a)(11) requires more than such belief in her own abilities. See, e.g., In re Trevarrow Lanes, Inc., 183 B.R. 475, 482 (Bankr. E.D. Mich. 1995):

> A critical issue in assessing the feasibility of a plan which
> provides for the debtor's continued operation is whether the

>   debtor can generate "sufficient cash flow to fund and maintain
>   both its operations and obligations under the plan." In re SM
>   104 Ltd., 160 B.R. 202, 234 (Bankr. S.D. Fla. 1993). The
>   "income projections must be based on concrete evidence of
>   financial progress and must not be speculative, conjectural or
>   unrealistic." In re Sound Radio, Inc., 103 B.R. 521, 524
>   (D.N.J. 1989), aff'd, 908 F.2d 964 (3d Cir.1990).

See also In re Hobble-Diamond Cattle Co., 89 B.R. 856, 858 (Bankr. D. Mont. 1988):

>   All of the Debtor's projections for income are speculative and
>   visionary, and are not based on the Debtor's past or present
>   performances. Where a Chapter 11 Plan contemplates
>   funding the Plan payments from operating revenues, its past
>   and present financial records are probative of feasibility. . . .
>   Speculative, conjectural, or unrealistic predictions cannot be
>   used to predict financial progress.

(Citations omitted).[16]

Accordingly, the debtor has not met her burden under section 1129(a)(11) to warrant approval of her proposed chapter 11 plan over the objections of creditors and the United States trustee. Thus confirmation of her amended plan will be denied.[17]

Finally, as the debtor was granted sufficient opportunity to present a viable plan yet was unable to do so, and was on notice of her need to promptly present a viable plan, Certified Mortgage's motion to dismiss shall be granted pursuant to 11 U.S.C. §

---

[16]Chapter 13 has a feasibility provision, section 1325(a)(6), similar to section 1129(a)(11). Courts have been reluctant to approve chapter 13 reorganization plans where the funding is based upon a business to begin operation after confirmation, without persuasive evidence that the new business will be successful. See In re Nesser, 206 B.R. 357, 367 (Bankr. W.D. Pa. 1997) (confirmation of a chapter 13 plan whose funding, in part, would be based upon the successful opening of a tavern is denied, where the business projections of the tavern are speculative); see also In re Keach, 225 B.R. 264, 269-70 (Bankr. D.R.I. 1998) (chapter 13 confirmation denied where funding for proposed plan could be obtained only if debtor's business increased gross revenues by 37% and the debtor offered insufficient evidence that such an increase was likely), vacated and remanded on other grnds, 243 B.R. 851 (B.A.P. 1st Cir. 2000).

[17]As a result, I need not consider the many other confirmation issues directly or indirectly raised by the parties.

1112(b). As before, this dismissal shall preclude the debtor from filing future bankruptcy cases without obtaining prior court approval. See 11 U.S.C. §§ 105(a), 349, and 1112(b).

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| SOLANGE D. CHADDA | : | |
| Debtor | : | Bankruptcy No. 07-12665bif |

................................................

ORDER

................................................

AND NOW, this 9th day of November 2007, for the reasons stated in the accompanying memorandum, it is hereby ordered that confirmation of the debtor's proposed amended plan of reorganization, filed on July 30, 2007 is denied.

It is further ordered that the debtor shall not file any future bankruptcy cases without obtaining prior approval from this court, which approval shall only be sought upon notice to all parties in interest, including the United States trustee. See In re Casse, 198 F.3d 327 (2d Cir. 1999).

The clerk of court shall serve a copy of this order upon all creditors. See Fed. R. Bankr. P. 2002(f)(2) [Interim].

_____
BRUCE FOX
United States Bankruptcy Judge

copies to:

Ms. Solange D. Chadda
408 South 47th Street
Philadelphia, PA 19143

David A. Scholl, Esquire
Regional Bankruptcy Center of SE PA
Law Office of David A. Scholl
6 St Albans Avenue
Newtown Square, PA 19073

Andrew S. Kasmen, Esquire
Silverman Burns Kasmen & Krawitz
The Pavilion, Suite A-51
261 Old York Road
Jenkintown, PA 19046

Barbara K. Hager, Esquire
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Kevin P. Callahan, Esquire
Office of the U.S. Trustee
833 Chestnut Street, Suite 500
Philadelphia, PA 19107